UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CECILIA S. DALLY,                          Case No. 2:24-cv-
                                           HON.
              Plaintiff,                   MAG. JUD.

vs.

CITY OF MELVINDALE, JOSEPH
JACKSON, JULIE RAUSER, and
DAWN CARTRETTE individually
and in their official capacities, and
jointly and severally,

              Defendants.
_____
GARY T. MIOTKE (P41813)
Attorney for Plaintiff
6828 Park Avenue
Allen Park, MI 48101
(313)-388-4809
gmiotke@miotkelawoffice.com
_____

<u>COMPLAINT AND DEMAND FOR JURY TRIAL</u>

NOW COMES the Plaintiff, by and through her attorney, and for her

Complaint she states that:

<u>JURISDICTION, PARTIES, VENUE</u>

1. This action arises out of the Plaintiff's employment.

2. Count I is an action to enforce civil rights pursuant to 42 USC 1983. This Court has jurisdiction over Count I pursuant to 28 USC 1331 and 28 USC 1343(a)(3) and (4).

3. This Court has jurisdiction over Counts II through VII by virtue of the doctrine of supplemental jurisdiction, 28 USC 1367.

4. Plaintiff is (a) a resident of the City of Southgate, County of Wayne, State of Michigan and (b) a woman.

5. Defendant, CITY OF MELVINDALE ("City") is a Michigan municipal corporation that exists by virtue of the laws of the State of Michigan within the Eastern District of Michigan, Southern Division.

6. Defendant, JOSEPH JACKSON ("Jackson") is (a) a resident of a municipality that exists within the Eastern District of Michigan, Southern Division and (b) a man. For all times material to this Complaint, he has also been a member of the City's City Council.

7. Defendant, JULIE RAUSER ("Rauser") is a resident of a municipality that exists within the Eastern District of Michigan, Southern Division. For all times material to this Complaint, she has also been a member of the City's City Council.

8. Defendant, DAWN CARTRETTE ("Cartrette") is a resident of a municipality that exists within the Eastern District of Michigan, Southern Division.

For all times material to this Complaint, she has also been a member of the City's City Council.

9. The events giving rise to this case arose within the Eastern District of Michigan.

<u>BACKGROUND FACTS</u>

10. For all times material to this Complaint, Plaintiff has been employed by the City as the City's full-time Executive Secretary to Mayor and Council and remained so employed until May 8, 2024 or May 9, 2024 as described in this Complaint.

11. Plaintiff's employment in the position of the City's full-time Executive Secretary to Mayor and Council was for a full-time position with compensation and benefits befitting a full-time employee as reflected in City Council Resolution 19-12-291 as well as the 3-page SCHEDULE C BENEFIT PAKAGE document signed by Plaintiff and then City Mayor Wheeler T. Marsee Jr. on February 25, 2020.

12. In this position, Plaintiff's employment security was and continued to be subject to the City's City Charter, namely "**CHAPTER 13. REMOVAL OF OFFICIALS A. <u>Appointed Officials: Who May Be Removed and Causes For Removal</u>**."

13. After the City election in November 2023, significant tensions arose between the new City Council majority and the City's new Mayor Nicole Shkira ("Mayor).

14. For her part, Plaintiff did her best to avoid these tension and focused on just doing her job.

15. Unfortunately, on December 18, 2023, some issues arose related to a meeting agenda for a City Council meeting which led to argument between Jackson and the Mayor with the Plaintiff being involved because meeting agendas related to her duties.

16. A local attorney named Bill Colovos ("Colovos") arrived during this discussion to talk to the Mayor about an issue.

17. Colovos heard the commotion that Jackson was causing and came to the doorway 2 times and asked to speak with the Mayor and the Plaintiff.

18. However, Jackson persisted with his argument; and the Mayor and the Plaintiff were not able to remove themselves from the situation.

19. Jackson called City Administrator Richard Ortiz ("Ortiz") and said he wanted certain items removed from the agenda.

20. Ortiz did so.

21. After Jackson's continued persistence and belligerence, Colovos entered into the Plaintiff's office by her desk and told Jackson that he should not speak to ladies like that.

22. Jackson reacted irrationally and violently.

23. Jackson lunged at Colovos and went face-to-face with Colovos in an escalated, enraged, and aggressive manner saying to Colovos:

    (a) He doesn't take orders from Colovos.

    (b) Colovos would not be walking out of the office (thus implying physical harm to Colovos).

    (c) Colovos doesn't belong in City Hall.

    (d) Colovos is nobody.

    (e) He will physically throw Colovos out of City Hall.

    (f) He will physically take Colovos on.

24. Plaintiff was trapped in the corner of her desk with her chair in front of her and feared for her life.

25. Then, most bizarrely, Jackson approached the Plaintiff, leaned on top of her body, and began kissing her face.

26. Plaintiff was in extreme emotional, physical, and mental distress with no way out of this outrageous situation.

27. Plaintiff pressed the panic button for the City's Police Department.

28. Members of the City's Police Department arrived and gained control of the situation.  One officer removed Plaintiff from the situation.

29. Plaintiff was taken to the Police Department where a rescue provided emergency care.

30. Having witnessed and experienced such a traumatic and frightening altercation and situation, Plaintiff felt dizzy and began to vomit.

31. On December 20, 2023, Plaintiff submitted a written statement to the City's Police Department describing the incident of December 18, 2023.

32. Thereafter, also on December 20, 2023, the City's City Council failed to vote to confirm the reappointment of the Plaintiff as the City's full-time Executive Secretary to Mayor and Council, with Rauser and Cartrette voting against the reappointment.

33. Yet, on January 17, 2024, the City's City Council voted to confirm the reappointment of the Plaintiff as the City's full-time Executive Secretary to Mayor and Council, with Rauser and Cartrette abstaining from the vote.

34. Regardless, the tensions between the Mayor and the majority of the City Council continued.

35. Indeed, tensions seemed to increase after it became apparent that someone had put a listening device in the Mayor's office in City Hall.

36. On February 29, 2024, another incident took place in City Hall involving the Mayor, Jackson, and Rauser.

37. Pursuant to the City's Charter, the Mayor had scheduled a meeting for an emergency appointment to be made to the City's Board of Review.

38. Jackson was in a rage, acted aggressively, and also acted in an escalatory manner.

39. As usual, Jackson was also extremely loud.

40. Further, Jackson called the Mayor a liar and said she was not the queen of the castle.  He also said she was holding an illegal meeting.

41. Jackson then proceeded to demand the commission list.

42. Jackson and Rauser then entered the Plaintiff's office with the Mayor closely behind.

43. Plaintiff called a detective with the City's Police Department since she did not feel safe alone with Jackson.

44. Jackson forcefully made various, unreasonable demands to the Plaintiff related to the commission list.

45.  For her part, the Plaintiff demurred to the extent that Jackson's demands were unreasonable, but she nevertheless started to remove the sheets containing the commission list in attempting to get him the requested information even though she was shaking.

46. Due to the outlandish circumstances, the Mayor restricted the access that City Council members had to both her office and the Plaintiff's office.

47. This had also enraged Jackson who commented that the Plaintiff was the Council's secretary, too.

48. The Mayor acknowledged this point but countered that every time he comes in he is aggressive and causes problems.

49. The detective that the Plaintiff had called had arrived and asked Jackson and Rauser to leave the office and wait in the lobby.

50. In the lobby, the Plaintiff gave Jackson the requested commission copies in the presence of Rauser.

51. After this February 29, 2024 incident, the Plaintiff submitted a written statement to the City's Police Department describing it.

52. On May 1, 2024, the City's City Council held a meeting.

53. At this meeting, the tensions between the Mayor and the City Council continued and manifested themselves in a motion being made to move the mailboxes for City Council members into the Plaintiff's office.

54. The Mayor, who was chairing the meeting, ruled that the motion was out of order, would not entertain it, and explained that the mailboxes would not be moved due to the behavior of a City Council member—an oblique reference to Jackson's inappropriate actions in the Plaintiff's office as described above.

55. The Council members who made this motion and supported it relented such that this motion was withdrawn.

56. Thereafter, Cartrette made Motion 24-05-252, which was supported by Rauser, "to change the full-time position of Executive Secretary to the Mayor and Council to [a] part-time position."

57. During the discussion of this motion, the Mayor opposed this motion given the workload that the Plaintiff had and the Plaintiff's resulting need to take work home to complete her duties.

58. The Plaintiff was also allowed to speak related to this motion.

59. In so speaking, the Plaintiff did speak on a matter of public concern where she referred to the incident of December 18, 2023 and the assaults of Colovos and the Plaintiff that took place during this incident.

60. Jackson responded by saying that (a) the Plaintiff was lying in making her statements and (b) the Plaintiff was a liar.

61. On information and belief, these statements were reiterated at least in part by Jackson when the meeting was unofficially recessed.

62. After discussion, Motion 24-05-252 was voted on and was adopted by a 3-2 vote with Jackson, Rauser, and Cartrette casting the 3 votes in favor of it.

63. Due to City Charter requirements, Motion 24-05-252 did not become effective until May 8, 2024 or May 9, 2024.

64. By adopting Motion 24-05-252, the Defendants essentially removed the Plaintiff from the position she held, namely the position of the City's full-time Executive Secretary to Mayor and Council; and they offered the Plaintiff a new part-time position performing the same duties.

65. In part in the alternative to paragraph 64, the adoption of Motion 24-05-252 still constitutes an adverse employment action vis-à-vis the Plaintiff even if it is characterized differently than as stated in paragraph 64 above because it resulted in a reduction of pay and benefits to the Plaintiff.

66. Further, in adopting Motion 24-05-252, the Defendants attempted to ignore and/or did ignore the requirements of City Charter "**CHAPTER 13. REMOVAL OF OFFICIALS A. <u>Appointed Officials: Who May Be Removed and Causes For Removal</u>**."

67. Due to the stress of the situation at the May 1, 2024 meeting including the Defendants' adoption of Motion 24-05-252, the Plaintiff was forced to leave the meeting for health reasons and appears to have been treated by the City as being on an unpaid leave of absence since her departure from this meeting for health reasons.

68. Plaintiff's speech, statements, communications, associations, and/or actions as described at paragraphs 27, 31, 43, 51, and/or 59 above were on or

related to matters of a public concern where they concerned the inappropriate and even criminal conduct, statements, and/or actions of Jackson as described above.

69. Further, by virtue of the same speech, statements, communications, associations, and/or actions, the Plaintiff did report violations or suspected violations of law to one or more public bodies, including all of the Defendants.

70. Moreover, Plaintiff's speech, statements, communications, associations, and/or actions related to the sexual harassment of Plaintiff by Jackson constitute things that are protected by Section 701 of Michigan's Elliott-Larsen Civil Rights Act.

71. The Defendants subjected the Plaintiff to the adverse action(s) as described above at paragraph 62, paragraph 64, and/or in the alternative in part paragraph 65.

72. The Defendants did subject the Plaintiff to the above adverse action(s) because of the Plaintiff's above speech, statements, communications, associations, and/or actions that were protected under the United States Constitution and the laws of the United States and the State of Michigan.

73. Therefore, the adverse action(s) taken against the Plaintiff by the Defendants was/were contrary to the United States Constitution and the laws of the United States of America and the State of Michigan.

<u>COUNT I: DEPRIVATION OF THE PLAINTIFF'S FEDERAL CIVIL<br>RIGHTS AS TO ALL DEFENDANTS</u>

74. The Plaintiff incorporates paragraphs 1 through 73 above by reference.

75. This Count is brought pursuant to 42 USC 1983.

76. The adverse action(s) of removing the Plaintiff from her position as the City's full-time Executive Secretary to Mayor and Council and/or of reducing that position to a part-time position was/were taken by the Defendants against the Plaintiff as noted above under color of state law.

77. The adverse action(s) stemmed from purposeful discrimination, purposeful retaliation, and/or from the City's policy(ies) and/or custom(s). This includes, but is not necessarily limited to, actions taken by the City's City Council, Jackson, Rauser, and/or Cartrette as the City's final policymaker(s) for purposes of establishing the City's policy(ies) and/or custom(s).

78. The adverse action(s) violated the Due Process Clause of the Fourteenth Amendment in that the Plaintiff was removed from her position as the City's full-time Executive Secretary to Mayor and Council without notice and an opportunity to be heard prior to being removed such that Plaintiff was deprived of the property interest she had under Michigan law in her continued employment as the City's full-time Executive Secretary to Mayor and Council.

79. The adverse action also violated the Plaintiff's 1st Amendment rights to freedom of association, to freedom of speech and/or expression, and/or to petition

government for the redress of grievances in that it was done because of the Plaintiff's statements, actions, and/or activities that were protected under the 1st Amendment.

80.   As a direct and proximate result of the Defendants' violations of the Plaintiff's rights, Plaintiff has sustained damages including (but not necessarily limited to) the following:

(a)  Loss of income;

(b)  Loss of fringe benefits;

(c)  Loss of retirement and/or Social Security benefits;

(d)  Severe mental anguish and distress;

(e)  Embarrassment and humiliation;

(f)  Mental anguish stemming from the outrage she experienced as a result of the actions against her;

(g)  Fright, shock, and mortification;

(h)  Pain and suffering;

(i)  Damage to reputation;

(j) Liquidated damages;

(k) Punitive damages; and

(l)  Costs and attorney fees.

WHEREFORE, your Plaintiff respectfully requests this Honorable Court to enter a judgment in her favor against the Defendants, jointly and severally, awarding her an amount in excess of Seventy-Five Thousand ($75,000.00) Dollars to which she is entitled for compensatory, exemplary, liquidated, and punitive damages; granting her equitable relief; and awarding her costs, interest, and attorney fees so wrongfully incurred.

## COUNT II:  SEX DISCRIMINATION AND SEXUAL HARASSMENT IN VIOLATION OF ELLIOTT-LARSEN CIVIL RIGHTS ACT ("ELCRA") AS TO DEFENDANTS, CITY AND JACKSON

81.  Plaintiff incorporates paragraphs 1 through 80 above by reference.

82. Each Defendant was an "employer" within the meaning of the ELCRA.

83. Plaintiff was discriminated against by Defendants, City and Jackson in the terms and conditions of her employment because of her sex in violation of the ELCRA.

84. Specifically, these Defendants subjected the Plaintiff to a hostile work environment because of her sex as follows:

(a) Plaintiff belongs and belonged to a protected group as a woman.

(b) On December 18, 2023, and as described above, Jackson subjected the Plaintiff to conduct and/or communication on the basis of her sex.

(c) This conduct and/or communication to which the Plaintiff was subjected was unwelcome.

(d) The unwelcome sexual conduct or communication was intended to and/or did substantially interfere with the Plaintiff's employment or created an intimidating, hostile, or offensive work environment.

(e) The City is liable on the basis of *respondeat superior*.

85. As a direct and proximate result of the Defendants' violations of the Plaintiff's rights, Plaintiff has sustained damages including (but not necessarily limited to) the following:

(a)  Loss of income;

(b)  Loss of fringe benefits;

(c)  Loss of retirement and/or Social Security benefits;

(d)  Severe mental anguish and distress;

(e)  Embarrassment and humiliation;

(f)  Mental anguish stemming from the outrage she experienced as a result of the actions against her;

(g)  Fright, shock, and mortification;

(h)  Pain and suffering;

(i)  Damage to reputation;

(j) Liquidated damages;

(k) Punitive damages; and

(l)  Costs and attorney fees.

WHEREFORE, your Plaintiff respectfully requests this Honorable Court to enter a judgment in her favor against the Defendants, jointly and severally, awarding her an amount in excess of Seventy-Five Thousand ($75,000.00) Dollars to which she is entitled for compensatory, exemplary, liquidated, and punitive damages; granting her equitable relief; and awarding her costs, interest, and attorney fees so wrongfully incurred.

COUNT III:  ASSAULT AND/OR BATTERY AS TO DEFENDANT, JACKSON

86.  Plaintiff incorporates paragraphs 1 through 85 above by reference.

87. On December 18, 2023, Plaintiff was lawfully on the premises of the City's City Hall.

88. As described above, Jackson did make an unpermitted offensive and/or harmful bodily contact with the Plaintiff.

89. Jackson did make such contact with the Plaintiff willfully or intentionally.  Further, Jackson was at least grossly negligent in making such contact.

90. The contact was a direct touching of the Plaintiff's person and/or of something close to her.

91. As a direct and proximate result of Jackson's unlawful and even illegal actions, Plaintiff has sustained damages including (but not necessarily limited to) the following:

    (a)  Loss of income;

    (b)  Loss of fringe benefits;

    (c)  Loss of retirement and/or Social Security benefits;

    (d)  Severe mental anguish and distress;

    (e)  Embarrassment and humiliation;

    (f)  Mental anguish stemming from the outrage she experienced

        as a result of the actions against her;

    (g)  Fright, shock, and mortification;

    (h)  Pain and suffering;

    (i)  Damage to reputation;

    (j) Liquidated damages;

    (k) Punitive damages; and

    (l)  Costs and attorney fees.

    WHEREFORE, your Plaintiff respectfully requests this Honorable Court to enter a judgment in her favor against the Defendants, jointly and severally, awarding her an amount in excess of Seventy-Five Thousand ($75,000.00) Dollars to which she is entitled for compensatory, exemplary, liquidated, and punitive damages; granting her equitable relief; and awarding her costs, interest, and attorney fees so wrongfully incurred.

<u>COUNT IV:  BREACH OF CONTRACT AND VIOLATION OF CHARTER
DUTIES AS TO DEFENDANT, CITY</u>

92.  Plaintiff incorporates paragraphs 1 through 91 above by reference.

93. Per the City's Charter, Plaintiff's employment as an appointed official was governed in part by the City Charter and in part by the contract between the City and the Plaintiff.

94. Based on the City Charter, Plaintiff's employment security was subject to City Charter "**CHAPTER 13. REMOVAL OF OFFICIALS A. <u>Appointed Officials: Who May Be Removed and Causes For Removal</u>.**"

95. Further, by operation of law, Chapter 13.A. of the City Charter necessarily governed Plaintiff's employment security and was part of her contractual relationship with the City regardless of any attempts by the City or its officials to attempt to negate or to alter the requirements of Chapter 13.A.

96. Indeed, any such attempts to negate or to alter the requirements of Chapter 13.A. would necessarily be a nullity since they would be contrary to the City Charter.

97. Pursuant to Chapter 13.A. of the City Charter, the Defendants had to comply with the following requirements in removing the Plaintiff from the full-time Executive Secretary to Mayor and Council position:

(a) Pursuant to Section 1 of Chapter 13.A. of the City Charter, there had to be one of 7 enumerated causes for removal.

(b) Pursuant to Section 2 of Chapter 13.A. of the City Charter, removal proceedings had to be instituted by the filing of a written complaint/petition with the City Council specifying the cause(s) for removal with said complaint/petition being supported by a properly acknowledged affidavit.

(c) Pursuant to Section 3 of Chapter 13.A. of the City Charter, the City Council had to formally hear and determine the charges stated in the written complaint/petition.

(d) Pursuant to Section 4 of Chapter 13.A. of the City Charter, the Plaintiff had to be furnished with a copy of the charges stated in the written complaint/petition and was to be allowed to be heard in her own defense with the aid of counsel.

(e) Pursuant to Section 5 of Chapter 13.A. of the City Charter, the hearing on the written complaint/petition and the determination of the charges had to be made within 20 days after the complaint/petition was filed.

98. The Plaintiff complied with the requirements of the City Charter and did not breach the contract between the City and her.

99. Based on the foregoing, the City had both City Charter duties and contractual duties (expressly required and/or implied by operation of law) with

respect to removing Plaintiff from her employment as the City's full-time Executive Secretary to Mayor and Council.

100. Yet, the City violated said City Charter and contractual duties as well as breached the employment contract between it and the Plaintiff in that the Defendants violated Chapter 13.A. of the City Charter when they removed the Plaintiff from the full-time Executive Secretary to Mayor and Council position by:

(a) Contrary to Section 1 of Chapter 13.A. of the City Charter, they removed the Plaintiff from this position and the basis for the removal was not one of 7 enumerated causes for removal.

(b) Contrary to Section 2 of Chapter 13.A. of the City Charter, they removed the Plaintiff from this position but no removal proceeding had been instituted by the filing of a written complaint/petition with the City Council specifying the cause(s) for removal with said complaint/petition being supported by a properly acknowledged affidavit.

(c) Contrary to Section 3 of Chapter 13.A. of the City Charter, they removed the Plaintiff from this position without the City Council having formally heard and determined charges stated in a written complaint/petition.

(d) Contrary to Section 4 of Chapter 13.A. of the City Charter, they removed the Plaintiff from this position even though the Plaintiff had not

been furnished with a copy of any charges stated in a written complaint/petition and had <u>not</u> been allowed to be heard in her own defense with the aid of counsel.

(e) Contrary to Section 5 of Chapter 13.A. of the City Charter, they removed the Plaintiff from this position and there was <u>no</u> hearing on any written complaint/petition and <u>no</u> determination of any charges made within 20 days after a complaint/petition was filed.

101. As a direct and proximate result, the Plaintiff has sustained damages including (but not necessarily limited to) the following:

(a)  Loss of income;

(b)  Loss of fringe benefits;

(c)  Loss of retirement and/or Social Security benefits;

(d)  Severe mental anguish and distress;

(e)  Embarrassment and humiliation;

(f)  Mental anguish stemming from the outrage she experienced as a result of the actions against her;

(g)  Fright, shock, and mortification;

(h)  Pain and suffering;

(i)  Damage to reputation;

(j) Liquidated damages;

21

(k) Punitive damages; and

(l)  Costs and attorney fees.

WHEREFORE, your Plaintiff respectfully requests this Honorable Court to

enter a judgment in her favor against the Defendants, jointly and severally,

awarding her an amount in excess of Seventy-Five Thousand ($75,000.00) Dollars

to which she is entitled for compensatory, exemplary, liquidated, and punitive

damages; granting her equitable relief; and awarding her costs, interest, and

attorney fees so wrongfully incurred.

## COUNT V: VIOLATION OF RIGHTS UNDER THE WHISTLEBLOWERS' PROTECTION ACT AS TO ALL DEFENDANTS

102. The Plaintiff incorporates paragraphs 1 through 101 above by

reference.

103. Under the Whistleblowers' Protection Act ("WPA"), the Defendants

were and/or are "employers" for all times material to this Complaint.

104. Under the WPA, each Defendant was also a "public body" for all times

material to this Complaint.

105. Under the WPA, the Plaintiff was an "employee" for all times material

to this Complaint.

106. The adverse action(s) taken by the Defendants against the Plaintiff as

noted above was taken because of the Plaintiff's report(s) of violations or

suspected violations of the law to at least one public body.

107. The Defendants thus violated the WPA.

108. As a direct and proximate result of the Defendants' violations of the Plaintiff's rights, Plaintiff has sustained damages including (but not necessarily limited to) the following:

      (a)  Loss of income;

      (b)  Loss of fringe benefits;

      (c)  Loss of retirement and/or Social Security benefits;

      (d)  Severe mental anguish and distress;

      (e)  Embarrassment and humiliation;

      (f)  Mental anguish stemming from the outrage she experienced as a result of the actions against her;

      (g)  Fright, shock, and mortification;

      (h)  Pain and suffering;

      (i)  Damage to reputation;

      (j) Liquidated damages;

      (k) Punitive damages; and

      (l)  Costs and attorney fees.

WHEREFORE, your Plaintiff respectfully requests this Honorable Court to enter a judgment in her favor against the Defendants, jointly and severally, awarding her an amount in excess of Seventy-Five Thousand ($75,000.00) Dollars

to which she is entitled for compensatory, exemplary, liquidated, and punitive damages; granting her equitable relief; and awarding her costs, interest, and attorney fees so wrongfully incurred.

### COUNT VI:  RETALIATION IN VIOLATION OF ELLIOTT-LARSEN CIVIL RIGHTS ACT ("ELCRA") AS TO ALL DEFENDANTS

109.  Plaintiff incorporates paragraphs 1 through 108 above by reference.

110. Each Defendant was a "person" within the meaning of the Elliott-Larsen Civil Rights Act ("ELCRA").

111. The Defendants violated Section 701 of the ELCRA, specifically MCL 37.2701(a) and (f), by taking the adverse action(s) they did against the Plaintiff as described above.

112. The Defendants violated the ELCRA by taking the adverse action(s) against the Plaintiff as described above because (a) she had engaged in the above protected activity and/or (b) in order to interfere with her exercise or enjoyment of rights granted by the ELCRA.

113. As a direct and proximate result of the Defendants' violations of the Plaintiff's rights, Plaintiff has sustained damages including (but not necessarily limited to) the following:

      (a)  Loss of income;

      (b)  Loss of fringe benefits;

      (c)  Loss of retirement and/or Social Security benefits;

(d)  Severe mental anguish and distress;

(e)  Embarrassment and humiliation;

(f)  Mental anguish stemming from the outrage she experienced

as a result of the actions against her;

(g)  Fright, shock, and mortification;

(h)  Pain and suffering;

(i)  Damage to reputation;

(j) Liquidated damages;

(k) Punitive damages; and

(l)  Costs and attorney fees.

WHEREFORE, your Plaintiff respectfully requests this Honorable Court to enter a judgment in her favor against the Defendants, jointly and severally, awarding her an amount in excess of Seventy-Five Thousand ($75,000.00) Dollars to which she is entitled for compensatory, exemplary, liquidated, and punitive damages; granting her equitable relief; and awarding her costs, interest, and attorney fees so wrongfully incurred.

### COUNT VII: DEFAMATION AND SLANDER AS TO DEFENDANT, JACKSON

114.  Plaintiff incorporates paragraphs 1 through 113 above by reference.

115. The statements that Jackson made about the Plaintiff at or contemporaneous to the City Council meeting on May 1, 2024 expressly or to the

effect that the Plaintiff had lied about Jackson's behavior on December 18, 2023 and that the Plaintiff was a liar were false.

116. These statements, or at least some of these statements, were unprivileged and were necessarily heard by third parties.

117. When Jackson made these statements, he did so with actual malice and knew them to be false.  Further, and necessarily, Jackson was at least grossly negligent when he made these statements.

118. Moreover, Jackson's statements were defamatory *per se*.

119. As a direct and proximate result, the Plaintiff has sustained damages including (but not necessarily limited to) the following:

     (a)  Loss of income;

     (b)  Loss of fringe benefits;

     (c)  Loss of retirement and/or Social Security benefits;

     (d)  Severe mental anguish and distress;

     (e)  Embarrassment and humiliation;

     (f)  Mental anguish stemming from the outrage she experienced as a result of the actions against her;

     (g)  Fright, shock, and mortification;

     (h)  Pain and suffering;

     (i)  Damage to reputation;

(j) Liquidated damages;

(k) Punitive damages; and

(l)  Costs and attorney fees.

WHEREFORE, your Plaintiff respectfully requests this Honorable Court to enter a judgment in her favor against the Defendants, jointly and severally, awarding her an amount in excess of Seventy-Five Thousand ($75,000.00) Dollars to which she is entitled for compensatory, exemplary, liquidated, and punitive damages; granting her equitable relief; and awarding her costs, interest, and attorney fees so wrongfully incurred.

DEMAND FOR TRIAL BY JURY IS HEREBY MADE.

DATED: July 29, 2024                    /s/ GARY T. MIOTKE_____
                                        GARY T. MIOTKE (P41813)
                                        Attorney for Plaintiff